## BYRD v. THE STATE, 1 Howard, 247.

### ACCESSORY TO MURDER.

The records of the old county court are public documents, and when that court was abolished, the clerk of the probate court was appointed as the officer to take charge of those records; and the register of the orphan's court was directed to deliver to him all books, records, &c., pertaining to the office of register. He is therefore the proper certifying officer of all such records. See act of 1833, p. 136.

The rule is well settled in this state, that a party may pursue such order, as he thinks proper, in the introduction of his testimony, unless where a foundation is necessary to be laid for the introduction of secondary evidence.[1]

The district attorney is the proper person to prosecute, and so far as official acts in prosecutions are required by law to be done in a particular way, or to assume permanent character, he is required, and is the only one authorized, to discharge such duties; such as signing indictments, and all other proceedings of an official character on the part of the state. When these have been performed, it is not error for the district attorney to withdraw from the prosecution, and for other counsel to appear on the trial in his stead.

The jurisdiction of the county court, under the old constitution, for the trial of slaves, was only concurrent with that of the circuit court. The new constitution took effect, from the time of its adaption, in all cases, unless specially excepted, and by it the jurisdiction in the trial of slaves was taken from the county court and transferred to the circuit court, and the county court abolished.

Where the *venue* is changed, it is not the duty of the clerk to send any but the original papers in the case;[2] and a writ of error to the circuit court of the county in which the trial was had, will not reach an error in the proceedings of the court of the county from which the *venue* has been changed. Quære—Can a writ of error be issued to the circuit court of such county?

In Missouri, in a change of *venue* in a criminal cause, the original indictment must be retained in the office of the clerk in the county in which it is found. A copy only should be included in the transcript of the record and proceedings. Ruby v. State, 7 Mo., 206.

The *venire* is no part of the record, and if an objection exists as to it, or to the panel of jurors summoned under it, the party, to avail himself of it, must place it upon the record by bill of exceptions.

Special terms of the circuit court, like the regular terms, are regulated by law; and the certificate of the clerk, and the allegations in the indictment that it was found at a special term, will be deemed by this court sufficient evidence of that fact.

It is the province of the caption of an indictment to show when the indictment was found, and before what court. And where the record states that "the grand jury was empanelled and sworn to inquire in and for the body of the county of Warren, viz. J. C., foreman," &c.; this is sufficient evidence that the grand jury was sworn, Castleman as foreman; and the swearing him as foreman was a sufficient appointment.

Where a former judgment of the circuit court has been reversed for errors occurring during the trial, and not affecting the plea, and the cause remanded, it is not necessary to arraign the prisoner again on his second trial, inasmuch as the former plea still remained.

---

[1] Dyson v. State, 26 Miss., 362.

[2] Changed by statute. Rev. Code, 621, art. 229. See also Rev. Code, 1871. Browning v. State, 30 Miss., 656; Bishop on Cr. Procedure, 108–119; and notes.

Error to Hinds circuit court.

This case originated in the circuit court of Warren county, at the February special term, 1833, thereof, and was brought to this court from the February term, 1834, of said circuit court, and reversed and remanded by this court to the circuit court for further proceedings. A change of *venue* was obtained to the circuit court of Hinds county, and the trial took place therein, in which the plaintiff in error was convicted, and he brings his case again to this court, and assigns the following errors:

1. A paper purporting to be a record of the conviction of the slave, Daniel, was improperly admitted to be read in evidence on the trial of said cause.

2. The court erred as set out in the bill of exceptions.

3. The court erred in not arresting the judgment.

4. The court erred in not granting a new trial in the above cause.

5. The court erred in permitting the district attorney to withdraw from the prosecution of said cause and to abandon it, and give it up to the entire management and control of counsel employed by an individual to prosecute said case.

6. It erred in refusing to permit the counsel for the defendant to conclude the argument of said cause before the jury.

7. It erred in suffering the case to be put to the jury without causing the defendant to be arraigned, and demanding of him to plead.

8. It erred in putting the case to a jury without calling upon the defendant for his plea, and, in fact, without his pleading; and in refusing to discharge defendant upon *habeas corpus.*

*Coalter* and *Warren* for plaintiff in error.

*T. F. Collins,* attorney general, and *S. S. Prentiss,* contra.

SHARKEY, C. J.:

All the points arising in this case are embraced in the assignment of errors and will be considered in the order of assignment.

It is said, first, that the court below erred in permitting a paper purporting to be a record of the conviction of Daniel to

be read to the jury.   The ground of objection taken to the admissibility of this record is, that it was not certified by the proper officer.   It is a record of proceedings in the county court of Warren county previous to the adoption of the present constitution, in a prosecution against a slave, Daniel, for the murder of Joel Cameron, and is certified by John A. Marsh, as clerk of the probate court of Warren county.   For the prisoner, it is contended, that the board of county police succeeded to the jurisdiction of the county court, not specially distributed to another tribunal by the constitution ; and that, therefore, the police clerk is the proper certifying officer of matters on the records of the former county court.   It is true that, by the act of 1833, the board of police have all jurisdiction which formerly belonged to the county court, with the exception of such powers as may have been given to different tribunals by the constitution and laws.

Under our former organization, the county courts had jurisdiction in the trial of slaves for capital offenses, and that part of its jurisdiction is now vested in the circuit courts by the constitution.   The former register of the Orphan's court *was ex officio* clerk of the county court.   And the present clerk of the probate court is *ex officio* clerk of the board of police.   The records of the county clerk are public documents, and when the court was abolished, an officer was appointed to take the custody of those records, and that officer is the clerk of the probate court.

By an act passed in 1833, page 136, the register is directed to deliver to the clerk of the court of probate, all books, records, papers, and all other matters pertaining to the office of register. This act must have been designed to include every thing, especially as there is no other law that directed him to deliver any part of his records to any other officer, and without such direction, he would not be authorized to deliver them to any person, and as his office ceased, of course, it was not the intention of the legislature that records of public utility should remain in his hands when he ceased to be a certifying officer.   The record is properly certified, and was, therefore, properly admitted.   *Secondly*, " That the court erred as set out in the bill of exceptions." The first bill of exceptions must be understood as an objection

to the order of the testimony. Dr. Hagaman was asked if he was present at the finding of Cameron's watch, which he answered in the affirmative; and was then asked if the prisoner was present; which question was objected to by the prisoner's counsel, on the ground that no testimony had then been introduced to prove the conviction of Daniel, the principal named in the indictment.

The court very properly overruled the objection. It is a rule well settled, in this state at least, that a party may pursue such order as he thinks proper, in the introduction of his testimony, unless where a foundation must be laid for the introduction of secondary evidence. The first point raised by the second bill of exceptions is, as to the propriety or legality of permitting the district attorney to withdraw from the prosecution, and leave it to be managed by others. During the trial the district attorney stated that he was willing to withdraw from the prosecution, and leave the management of it to Mr. Prentiss, which the court permitted him to do, and the prisoner excepted. It is true, that the district attorney is the officer appointed to prosecute, and so far as official acts in prosecutions are required by law to be done in a particular way, or to assume permanent character, he is required, and, indeed, the only one authorized to discharge such duty; for instance, the indictment must be signed by him, and all other proceedings when an official act on the part of the state is necessary. But when all the preliminaries to trial have been duly performed, I do not think it error that other counsel should appear on the trial in his stead. Nor do I think the authorities relied on in support of this position show the existence of any such rule. The authority, cited from 3 Haywood, goes no further than to decide that an indictment must be signed by the district attorney. That is necessary in this state by positive enactment, and this indictment is properly signed by the district attorney. It is also set out in this bill of exceptions, that certain witnesses were then introduced and sworn. If this was intended to be included as a part of the objectionable proceeding, the objection is not set out, nor is it perceived. The next feature in this bill of exceptions, is as to the admissibility of the record of the county court of Warren county, which has been already

noticed under the first assignment.    It also appears by this bill, that the defendant's counsel, having introduced no evidence, claimed the right of opening and concluding the argument to the jury, which was properly refused by the court.

The only remaining point made by this bill of exceptions, arises out of the request made by prisoner's counsel to the court to charge the jury.    The counsel for the prisoner requested the court to charge the jury, that they must be satisfied from the evidence in the case, that Mercer Byrd was a free man, or they could not find a verdict of guilty.    And that from personal inspection of the prisoner, if they believed he was of negro blood and extraction, they would be authorized to presume him to be a slave in the absence of all testimony to the contrary.

There are three very conclusive reasons why this objection was not good.    In the first place, by the old constitution, the circuit courts had general jurisdiction in all matters civil and criminal, but in civil cases only when the matter in controversy exceeded fifty dollars.    This was a general grant of power, and the subsequent section authorizing the legislature to establish a court of probate, for the granting of letters testamentary and of administration for orphans' business, for county police, and the trial of slaves, cannot be construed as making an exception to the general grant, but only as conferring power to establish a particular court with concurrent jurisdiction in the trial of slaves. In the next place it was clearly, both by the constitution and statute, a court of general jurisdiction in criminal matters, and if slaves were persons who formed an exception to its general powers, the exception could only have been taken by plea to the jurisdiction, and the plea of not guilty admitted the jurisdiction; Chitty's Criminal Law, 438.    And lastly, the new constitution went into operation in all cases, unless specially excepted, from the time of its adoption, and by it the jurisdiction in the trial of slaves was taken from the county court and given to the circuit court, and the county court was abolished; because there was no provision for continuing it, and its jurisdiction was also repugnant to the constitution.    By the 3d section of the Schedule it was provided, that all officers then holding offices should continue to hold them " until they should be superseded,

pursuant to the provisions of the constitution, and until their successors be duly qualified."

There are no successors to the judges of the county court, and we have already decided in this court that, when there was no provision in the constitution for the appointment or election of successors, the office was abolished. The county courts after the adoption of the constitution, could not have continued to exercise the powers; because all their jurisdiction had been vested in tribunals entirely different. Even if the prisoner had been a slave, therefore, he was not triable by the county court, as that branch of jurisdiction had been transferred to the circuit court, which was kept in operation by the constitution. It was, therefore, unnecessary for the state to prove his freedom. This disposes of the points raised by the bill of exceptions, and brings us to the remaining errors assigned.

*Thirdly,* that the court erred in not arresting the judgment. Several reasons were assigned in support of this motion: First, it does not appear from the indictment, or in the caption thereof when said indictment was found, or before whom. It is the province of the caption to contain those particular statements, and when the record is returned on a writ of error it should be complete. On looking into this record, some facts appear which may readily account for any defect mentioned, if there is any. It cannot be overlooked that the offense was committed in Warren county and the prosecution originated there. That after one trial in that court the *venue* was changed to the county of Hinds, on the application of the prisoner, when a second trial took place, and he was convicted, and took his writ of error to the proceedings in Hinds county on the last trial. The writ of error is directed to the clerk of the circuit court of Hinds county and by him the record is returned. When the *venue* was changed, I am not aware that it was the duty of the clerk of Warren county to send anything more than the original papers and pleadings in the case, and if so, this writ of error cannot reach any defect in the record from that county. The clerk of the circuit court of Hinds county could only make up his record from the original papers in the case which came into his possession, and the proceedings that took place in his court. If there

be any foundation for the first reason in arrest of judgment, it must have originated in the proceedings in Warren, and could not have been noticed by the judge in Hinds.

The reason, however, is not sustainable on its merits. It does appear from the indictment, that it was found by the grand jury, empanelled and sworn in and for the body of the county of Warren, which has been held sufficient by this court, in this same case, on a previous trial.

The second reason is, " that it does not appear where the jury came from, constituting the pretended grand jury, empanelled at said pretended February term, or by what authority they came there or were empanelled, nor but that it might have been made up of bystanders." The first branch of this reason is untenable, by a decision of this court already referred to. As to their competency, and the authority by which they were summoned, it is now out of our power to question it. The *venire* did not constitute any part of the proceeding that could be reached by this writ of error, nor do I think, under any circumstances, it necessarily formed a part of the record. It is laid down in 1 Chitty's Criminal Law, 308, that if a disqualified juror be returned on the grand jury, he may be challenged, or the prisoner may plead it in avoidance, but it is even doubted whether such exception can be taken after trial. It is also clearly inferrible from the case cited from Martin and Yerger's Reports, that the *venire* is not considered as a part of the record. If there had been any objection to the *venire* or the jurors summoned, the prisoner might have placed it on the record, and the objection would have come fairly up. The case cited from 1 Wendell, evidently alludes to the *venire* for a petit jury, and in that case it was certified to the court by the return on a *certiorari*, that no *venire* issued.

The third reason is, that by law the courts in Warren are held in May and November, and the indictment was found at February special term, without any authority on the record for holding such term. We are here again met by the fact that this is only a writ of error to Hinds circuit court, and there is nothing to justify a decision as to the records of Warren county unless they were properly and fully before us. It is believed

that this in itself would justify the overruling of the reason assigned. But independently of this, there are strong objections to sustaining it, which of themselves would be considered sufficient.

A special term of the circuit court is as much a matter regulated by a general law as the regular term. It is provided in certain cases, that a special term may be called. If it be not called in pursuance of law, it cannot be a special term, or any term at all, and to decide that this was not a special term, would give a flat contradiction to the record before us. The clerk has certified that the indictment was found at a special term, and the indictment itself, in every count, distinctly sets out the term as being special, held in February, 1833. If the clerk had set out the order by which the court was convened, it would have been liable to the same objection. Its validity would have been equally questionable. The order for that term was made matter of record in the supreme court, of which this court is but a continuation, under a different name, and of course, to us, it must be matter of public notoriety, such as we are bound to notice. One of the judges now presiding, was also presiding at that time, and if the order be a material part of the record, I should not feel warranted in deciding it to be a defect, knowing it to exist on the records of our own courts. It was placed there by virtue of a law, and became the means by which the law was enforced, and was, of course, a part of the general regulation.

The fourth reason in arrest of judgment is, "That it does not appear that Joseph Castleman, whose name purports to be signed or indorsed on said indictment, was by the court appointed foreman, and who indorsed said indictment a true bill." I do not think this reason is supported by the fact as it appears on the record. It appears that a "grand jury was empanelled and sworn to inquire in and for the body of the county of Warren, to wit: Joseph Castleman, foreman, etc." By this it appears that a grand jury was sworn, Castleman as foreman, and the swearing him as foreman was certainly a sufficient appointment within the meaning of the statute.

The fifth and last reason in arrest of judgment is, that it does not appear that the prisoner was charged on the indictment, or

that he was called on to plead since the reversal of the judgment by this court. The reversal of the judgment could affect none of the proceedings which took place previous to the commission of the error. The error for which it was reversed, occurred during the progress of the trial after issue joined, and did not in any degree affect the plea, which remained unimpaired by the reversal. The arraignment is nothing more than calling on the defendant to answer the accusation; 1 Chitty, 414; 4 Blackstone, 322. The prisoner had been arraigned, called on in the first trial, and pleaded not guilty. So long as this plea stood, it was not only unnecessary, but would have been improper to arraign him a second time. He was arraigned before the first trial, and pleaded; that trial was determined to have been irregular, and of course, was as though no trial had taken place, and it was certainly unnecessary that he should a second time be arraigned, when he could have pleaded nothing without a withdrawal of his first plea.

The *fourth* error assigned is, that the court erred in not granting a new trial, which was abandoned in the argument, and need not be noticed.

*Fifthly*, That the court erred in permitting the district attorney to withdraw from the prosecution and give it up to the management of counsel employed to prosecute. This point has been noticed under the second assignment, as arising in the bill of exceptions.

*Sixthly*, That the court erred in refusing to permit counsel for the prisoner to conclude the argument. This has already been decided.

The *seventh* and *eighth* errors are substantially the same, to wit: That it was error to try the prisoner without a second arraignment, and calling on him to plead. This question I have also already noticed.

After an examination as thorough as I have been able to give to the various points raised in an argument conducted with much zeal and ability, I am unable to discover any reason that would justify a reversal of the judgment, and however much I may regret that any individual should be found obnoxious to the criminal laws of the country, yet those laws must be enforced.

The judgment must be affirmed.